**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eduardo Aguilera,<br><br>    Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>    Respondents. | No. CV-19-01788-PHX-DJH (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE DIANE J. HUMETEWA, UNITED STATES DISTRICT JUDGE:

Petitioner Eduardo Aguilera, has filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.     Summary of Conclusion.**

Petitioner raises four grounds for relief in his Petition. All four grounds are unexhausted and procedurally defaulted without excuse. Petitioner argues that he is actually innocent of his Aggravated DUI offense because his license was not suspended at the time of his arrest. But the arguments he submits now were previously discussed and argued before his trial jury. Petitioner fails to demonstrate he is actually innocent. Therefore, the Court will recommend that the Petition be denied and dismissed with prejudice.

## II. Background.

### A. Facts of the Crimes.

The Arizona Court of Appeals found:

> In October 2013, a law enforcement officer served Aguilera with an Order of Suspension/Administrative Per Se ("2013 Suspension Order") and confiscated Aguilera's driver's license on suspicion of driving while under the influence ("DUI"). The 2013 Suspension Order stated: "[Y]our Arizona driving privilege is suspended for not less than 90 consecutive days effective 15 days from Date Served . . . . This order is final unless a summary review or hearing is requested . . . and this suspension will not end until all reinstatement requirements are met." The next day, Aguilera obtained a new driver's license from an MVD office and confirmed his current address. While obtaining the new license, Aguilera discussed his license status with an employee; he testified at trial that he left the MVD with the impression that his license would not be suspended without a hearing. Aguilera, however, did not request a hearing within the 15-day period following service of the 2013 Suspension Order; thus, the order became effective on November 11, 2013.
>
> On November 22, 2013, the MVD mailed an "Order of Suspension Reminder" to Aguilera at his current address on record. The "courtesy notice" stated that even though Aguilera obtained a new license on October 28, 2013, his driver's license was suspended effective November 11, 2013 and it would be eligible for reinstatement in February 2014 if he completed the requirements associated with reinstatement.
>
> Aguilera failed to reinstate his driver's license and in July 2014 he was arrested for suspicion of DUI. The State indicted Aguilera for (1) driving with a suspended license while under the influence of an intoxicating liquor or drug, (2) driving with a blood alcohol concentration of or exceeding .08, and (3) driving while under the influence of an impermissible drug or its metabolite. Because the State alleged that each of the three counts were committed while Aguilera's driving privileges were suspended, each count was charged as an aggravated offense.
>
> Aguilera represented himself at trial with the assistance of advisory counsel. His principal defense was that his license was valid at the time of his arrest because it appeared valid upon initial inquiry by the arresting officer and because Aguilera was led to believe by MVD "that it takes a hearing to suspend [a] driver's license." Anticipating this defense, the State filed a motion in limine expressing its concern that Aguilera would attempt to offer "misstatements of law" and would refer to hearsay statements made by an unidentified MVD employee. Aguilera urged the trial court to deny the motion "based on the fact that they told me different[ly] at the MVD and I have proof of what they told me to back it up." To resolve the issue, the court permitted Aguilera to "discuss what occurred at the MVD, except for you telling what other people said to you." The court informed Aguilera that "you can explain what happened at MVD . . . but you cannot include statements . . . . [A]s long as there's reasonable grounds of relevancy, I'm going to allow you to say, I went to MVD and here's what happened."
>
> A jury found Aguilera guilty as charged and the trial court imposed concurrent mitigated six-year prison sentences on each of the three counts.

Doc. 31-2, Ex. CC, at 10.

### B. Direct Appeal.

On March 2, 2016, Petitioner's counsel filed a notice of appeal. (Doc. 31-1, Ex. S, at 87.) On August 26, 2016, Petitioner's counsel filed an opening brief. (Doc. 31-1, Ex. W, at 100.) On February 23, 2017, the Arizona Court of Appeals affirmed Petitioner's conviction. (Doc. 31-2, Ex. CC, at 10.)

On March 6, 2017, Petitioner filed a motion for review with the Arizona Supreme Court. (Doc. 31-2, Ex. DD, at 17.) On August 17, 2017, the motion was denied. (Doc. 31-2, Ex. FF, at 30.) On September 19, 2017, the mandate issued. (Doc. 31-2, Ex. GG, at 32.)

### C. Post-Conviction Relief Proceedings.

On May 10, 2016, Petitioner filed a motion for "Evidentiary Hearing," which the court construed as a notice of post-conviction relief. (Doc. 31-2, Ex. KK, at 56.) On October 24, 2016, PCR counsel notified the superior court that counsel found no colorable claims for PCR relief. (Doc. 31-2, Ex. LL, at 59.) The court notified Petitioner he had until December 23, 2016 to file a pro per PCR petition. (Doc. 31-2, Ex. MM, at 64.) On February 4, 2017, the court dismissed the proceeding because Petitioner did not file petition by the deadline. (Doc. 31-2, Ex. NN, at 66.)[1]

### D. Petitioner's Federal Habeas Petition.

On August 22, 2018, Petitioner submitted the habeas Petition for mailing (doc. 1 at 11), and it was mailed on March 12, 2019 (doc. 1-1 at 1). The Petition was filed on March 15, 2019. The Court summarized Petitioner's four claims as follows:

> In Ground One, Petitioner alleges that Arizona's "admin per se" proceedings violate the Fifth and Fourteenth Amendments. In Ground Two, Petitioner appears to allege that he is actually innocent, stating that there were "major flaws" with a "stay" that was placed on his "driving record," and that, as a result, his driver's license was not suspended on July 20, 2014. In Ground Three, Petitioner alleges that his conviction violates the Double Jeopardy clause of the Fifth Amendment. And in Ground Four, Petitioner alleges that certain evidence was never presented to the jurors.

---

[1] Petitioner filed numerous additional motions with the court, which are outlined in the Response and do not need to be recounted here. (Doc. 31 at 12-16.)

(Doc. 19 at 2.)

On April 1, 2019, Respondents filed a Limited Response. (Doc. 16.) On April 26, 2019, Petitioner filed a Reply. (Doc. 17.)

**III.     Bypass of Time Calculation.**

Petitioner is deemed to have filed the Petition on August 22, 2018, even though it was not mailed until March 12, 2019. The Court will assume the Petition is timely, and Respondents agree it is "arguably" timely. Regardless, the Court would bypass the question of whether the Petition is timely because the administration of justice is better served here by addressing procedural default and actual innocence issues in the case. *See Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (noting a court has the discretion to decide whether the administration of justice is better served by "addressing the merits or by dismissing the petition as time barred.").[2]

**IV.     Procedural Default.**

**A.     Exhaustion.**

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless a petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) ("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim").

A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which his claim is based. *See id.* at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material,

---

[2] On June 24, 2019, Petitioner filed a "Request for Certificate of Appealability." (Doc. 30.) Therein, Petitioner submits explanations for his filing dates in this case and a second habeas matter in CV 19-02660-PHX-JGZ-BGM.

- 4 -

such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum . . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

**B.  Merits.**

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision which was contrary to clearly established federal law, or the state court decision was an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d); *Davis v. Ayala*, 135 S. Ct. 2187, 2198-99 (2015); *Musladin v. Lamarque*, 555 F.3d 834, 838 (9th Cir. 2009). The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." *Murray v. Schriro*, 746 F.3d 418, 441 (9th Cir. 2014) (quoting *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000)).

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.

*White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal citations and quotations omitted). *See also Arrendondo v. Neven*, 763 F.3d 1122, 1133-34 (9th Cir. 2014).

Factual findings of a state court are presumed to be correct and can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Sumner v. Mata*, 455 U.S. 591,

593 (1982). *See also Phillips v. Ornoski*, 673 F.3d 1168, 1202 n.13 (9th Cir. 2012).

**V.     Ground One.**

In Ground One, Petitioner argues that the Arizona "Admin Per Se"[3] statute violates the presumption of innocence, the "due process of law under the 5th Amendment," and "abridge[es] people's privileges." (Doc. 1 at 6.)

    **A.     Procedural Default.**

Petitioner's is unexhausted and procedurally defaulted because he did not raise this claim on direct appeal. On direct appeal, Petitioner argued that he should have been permitted to testify that a Motor Vehicle Department worker told him his license was not suspended. (Doc. 31-1, Ex. W, at 103.) A procedurally defaulted claim may not be barred from federal review, however, "if the petitioner can demonstrate either (1) 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Jones v. Ryan*, 691 F.3d 1093, 1101 (9th Cir. 2012) (quoting *Coleman*, 501 U.S. at 732). *See also Boyd v. Thompson*, 147 F.3d 1124, 1126-27 (9th Cir. 1998) (the cause and prejudice standard applies to pro se petitioners and to those represented by counsel). To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). "'[P]rejudice' is actual harm resulting from the constitutional violation or error." *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S.

---

[3] An admin per se/implied consent form informs detained motorists of the consequences under Arizona law of refusing to submit to and complete an officer's choice of scientific test for intoxication. *See State v. Gaffney*, 8 P.3d 376, 377 (Ariz. Ct. App. 2000); *see also* A.R.S. § 28-1321(B)(… After an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed by subsection A of this section, and if the violator refuses the violator shall be informed that the violator's license or permit to drive will be suspended or denied for twelve months, . . . unless the violator expressly agrees to submit to and successfully completes the test or tests.").

152, 170 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1996). Where a petitioner fails to establish either cause or prejudice, the court need not reach the other requirement. *See Hiivala v. Wood*, 195 F.3d 1098, 1105 n.6 (9th Cir. 1999); *Cook*, 538 F.3d at 1028 n.13.

Here, Petitioner presents no cause to explain why he failed to present this claim on direct appeal. He states that his "appellate attorney (Natalee Segal) did all the disputing for me. I raise[d] the issues in a motion for an evidentiary hearing." (Doc. 1 at 6.) Petitioner could have raised this issue on appeal but failed to do so. Petitioner argues that he attempted to raise this claim in a pro se "Motion for Evidentiary Hearing" before the Arizona Court of Appeals. (*Id.*) In the motion, he argued that his license was not actually suspended "until November 6, 2014 where a hearing took place at the Arizona Department of Transportation." (Doc. 31-1, Ex. X, at 111.) Petitioner argued that until he actually had a hearing, his license could not have been suspended. The court denied the motion because it was not filed by his appellate counsel. (Doc. 31-1, Ex. Y, at 117.) Petitioner's motion was insufficient to exhaust this claim.

### B. Actual Innocence.

A failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added). A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A petitioner must present "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Here, Petitioner fails to present evidence of actual innocence to excuse the procedural default of his claim. On September 3, 2019, Petitioner filed a Motion for Status Update. (Doc. 34.) In the motion, Petitioner asks how "many times do I have to invoke this

right of mine that I have in order to get the Court to acknowledge the evidence in my case?" (*Id*. at 1.) He asserts that he has had "the evidence to prove my innocence for over 5 years." (*Id*.) Petitioner's sole reference to exculpatory evidence is contained in Ground Four where Petitioner asserts that "Officer Chase [] wrote out an affidavit about my driver's license being valid. This affidavit was never presented to the jurors." (Doc. 1 at 9.) Petitioner did not present that affidavit to this Court. Importantly, Officer Chase testified at trial that the status of Petitioner's driver's license at the time of Aggravated DUI stop on July 4, 2014 was "valid."[4] (Doc. 31-3, Ex. RRR, at 91-92.) Officer Chase later testified that his review of Petitioner's status was based upon "limited access to his MVD record." (*Id*. at 96.) He testified that "more detailed MVD records" were available to personnel in the court system. (*Id*.) Petitioner's claim is not new because the trial jury considered Officer Chase's testimony prior to returning its verdict.

The Court has further reviewed the state-court record to search for evidence of actual innocence. On January 25, 2016, Petitioner filed a "Special Action Petition for Evidentiary Hearing" in the Maricopa County Superior Court. In that Petition, he alleged that his actual license suspension did not occur until December 6, 2014. He argued:

> On November 6, 2014, a hearing took place where a judge by the name of Jhon H. Walker suspended my driver's license and it was to take effect on December 6, 2014. My driver's license got suspended 5 months later from the state's accusations. This is the real due process of law going into effect. This is where my drivers license got suspended. This evidence was never presented to the jurors.

(Doc. 31-1, Ex. L, at 56.) But Petitioner is incorrect regarding his suspension. Petitioner's driving privilege was suspended based upon an October 27, 2013 DUI arrest. (Doc. 31-3, Ex. DDD at 11).[5] "On November 22, 2013, the MVD mailed an 'Order of Suspension Reminder' to Aguilera at his current address on record. The 'courtesy notice' stated that

---

[4] This is also reflected in the police report. (Doc. 31-2, Ex. AA, at 5; Doc. 31-2, Ex. DD, at 18.)

[5] Petitioner may be arguing that if his license was suspended in December of 2014, it could not have been suspended at the time of his Aggravated DUI arrest on July 5, 2014. But it is possible for a person to have several suspensions in effect at any given time.

- 8 -

even though Aguilera obtained a new license on October 28, 2013, his driver's license was suspended effective November 11, 2013[.]" (Doc. 31-3, Ex. DDD at 11.) Petitioner does not present evidence of actual innocence.

Importantly, this is also not new evidence. It was argued by Petitioner during his trial. The trial court ruled that Petitioner would not be permitted to discuss the December 2014 suspension hearing because that had no bearing on whether his license was suspended at the time of his DUI in July of 2014. (Doc. 31-2, Ex. RRR, at 89.) Petitioner also filed the motion prior to his sentencing, which occurred on February 26, 2016. (Doc. 31-1, Ex. N, at 67.)

### C. Non-cognizable Claim.

Petitioner's claim is also not cognizable because it challenges Arizona law regarding whether the State of Arizona may suspend a person's driving privilege under Arizona's motor vehicle statutes. *See* 28 U.S.C. § 2254(a) (Federal habeas corpus relief may be granted "only on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."); *Nunes v. Ramirez-Palmer*, 485 F.3d 432, 443 (9th Cir. 2007) ("[I]n federal court, there is no right to bring a habeas petition on the basis of a violation of state law."). Petitioner's assertion of a Fourteenth Amendment violation does not make this claim cognizable. *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996) ("[A petitioner] may not, however, transform a state-law issue into a federal one merely by asserting a violation of due process.").

## VI. Ground Two.

In Ground Two, Petitioner argues that the suspension of his driving privilege was set to "go into effect on July 20, 2014" if he did not request a stay of a Motor Vehicle Department hearing. (Doc. 1 at 7.) But Petitioner's claim appears to have no bearing on the nature of his conviction in this case. As noted above, Petitioner's first DUI stop was October 27, 2013. (Doc. 31-3, Ex. DDD at 11.) Petitioner's second DUI stop was July 5, 2014. (Doc. 31-3, Ex. DDD, at 15.) In Ground Two, Petitioner is contesting the suspension related to his July 5, 2014 DUI arrest. Petitioner is not in custody regarding that suspension.

He is in custody based upon the DUI arrest on July 5, 2014 and a suspension of driving privileges related to the October 27, 2013 DUI arrest.

Petitioner's claim is not cognizable because he is not in custody based upon a suspension of his license that may have occurred after his Aggravated DUI arrest. "The federal habeas statute gives the United States district courts jurisdiction to entertain petitions for habeas relief only from persons who are 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Maleng v. Cook*, 490 U.S. 488, 490 (1989) (per curiam) (citation omitted); *Williamson v. Gregoire*, 151 F.3d 1180, 1183 (9th Cir. 1998) ("Thus, the boundary that limits the 'in custody' requirement is the line between a 'restraint on liberty' and a 'collateral consequence of a conviction.' In general, courts hold that the imposition of a fine or the revocation of a license is merely a collateral consequence of conviction, and does not meet the 'in custody' requirement.").

Petitioner's claim is also unexhausted and procedurally defaulted because he did not raise this claim on direct appeal. Petitioner presents no cause to explain why he failed to present this claim on direct appeal. Petitioner was aware of the issues regarding his suspension and a stay because they were discussed during his trial. Petitioner asked questions of Malia Gibson of the Arizona Motor Vehicle Department regarding the stay of his license suspension between July 20 and July 28, 2014. (Doc. 31-2, Ex. SSS, at 109-110.) Petitioner chose to withdraw those questions after a side-bar discussion with the court. (*Id.*) Petitioner had sufficient information to raise this claim on appeal.

**VII. Ground Three.**

In Ground Three, Petitioner argues his "conviction was obtain[ed] in violation" of his Fifth Amendment right of "double jeopardy." (Doc. 1 at 8.) Petitioner acknowledges that his "DUI was already dismiss[ed] before in the past at the municipal court level" and that it "was dismissed without prejudice under the assumption that the case was considered a felony." (*Id.*)[6] Petitioner's claim is unexhausted and procedurally defaulted because he

---

[6] During trial, Petitioner objected to a lesser-included offense of DUI being included in the jury instructions based on the theory that the offense had already been dismissed in the municipal court. (Doc. 31-3, Ex. SSS, at 122.)

did not raise this claim on direct appeal. Petitioner acknowledges this claim was not raised on appeal and states that his "appellate attorney did all my disputing for me." (*Id.*) Petitioner presents no cause to excuse the failure to exhaust this claim in the state courts and he does not establish that he is actually innocent.

### VIII. Ground Four.

In Ground Four, Petitioner argues that evidence related to his license suspension was not admitted during his trial. He asserts that that "Officer Chase [] wrote out an affidavit about my driver's license being valid. This affidavit was never presented to the jurors." (*Id.* at 9.) Petitioner does not assert a violation of his constitutional rights. Petitioner's claim is also unexhausted and procedurally defaulted because he did not raise this claim on direct appeal. Petitioner acknowledges this claim was not raised on appeal and states that his "appellate attorney did all my disputing for me." (*Id.*) Petitioner presents no cause to excuse the failure to exhaust this claim in the state courts and he does not establish that he is actually innocent. As noted above, Officer Chase and a witness from the Arizona Motor Vehicle Division testified regarding the status of Petitioner's suspension, so Petitioner could have raised this claim on direct appeal.

### IX. Motion for Hearing or Conference.

On April 5, 2019, Petitioner filed a Motion for Hearing or Conference requesting a "telephonic hearing" to "prove that my driver's license was valid" at the time of his Aggravated DUI stop. (Doc. 15.) The Court finds that the record is very clear regarding the status of Petitioner's license at the time of his Aggravated DUI stop. A telephonic hearing will not assist the Court in this case.

### X. Motion for Status Update.

On September 3, 2019, Petitioner filed a Motion for Status Update requesting the status of his Petition. (Doc. 34.) The Court recommends the Motion be denied as moot.

### XI. Conclusion.

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027,

1041 (9th Cir. 2011). Based on the above analysis, the Court finds that Petitioner's claims are not cognizable, procedurally defaulted, or fail. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that the Motion for Hearing or Conference (doc. 15) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion for Status Update (doc. 34) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the Motion for Certificate of Appealability (doc. 30) and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the ruling debatable, and because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the

findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 16th day of October, 2019.

Honorable John Z. Boyle
United States Magistrate Judge